CENTER FOR BIOLOGICAL DIVER-
SITY, Sierra Club, Southern Appala-
chian Biodiversity Project, and Geor-
gia Forestwatch, Plaintiffs

v.

Sam HAMILTON, Regional Director,
Region 4, United States Fish and
Wildlife Service; Steven Williams, Di-
rector, United States Fish and Wild-
life Service; and Gale Norton, Secre-
tary of the Interior, Department of
the Interior, Defendants.

No. CIV.A.1:04CV2573 JTC.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 2, 2005.

Order Denying Reconsideration
Aug. 24, 2005.

Curtis Andrew Cox, Lawrence D. Sanders, Atlanta, GA, for Plaintiffs.

Michael R. Eitel, U.S. Department of Justice, Washington, DC, for Defendants.

## ORDER

CAMP, District Judge.

Pending before the Court is Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [# 3]. Plaintiffs bring this suit for Defendants' alleged violations of the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"). The issues presented by Defendants' motion to dismiss are whether Defendants are collaterally estopped from asserting a statute of limitations defense and, if not, whether Plaintiffs' claims are barred by the statute of limitations. Upon review of the parties' briefs and the oral arguments presented on April 1, 2005, the Court **GRANTS** Defendants' motion to dismiss [# 3].

## I. Background [1]

Plaintiffs are non-profit organizations dedicated to protecting the environment and natural resources. Defendant Norton is the U.S. Secretary of the Interior. Norton has delegated responsibility for the actions at issue in this suit to Defendant Williams, who is the Director of the U.S. Fish & Wildlife Service ("FWS"). Defendant Hamilton is the Regional Director of FWS for the region encompassing Georgia.

Plaintiffs have sued all Defendants in their official capacities only.

On April 22, 1992, FWS published a final rule listing two species of fish, the Blue Shiner and Goldline Darter (the "minnows"), as endangered. 57 Fed.Reg. 14786. These minnows are small—three to four inches in length—and found only in the Cahaba, Coosa, Coosawattee, Ellijay, and Cartecay River systems.

Plaintiffs bring this suit to require Defendants to designate a critical habitat for the minnows. Plaintiffs allege that Defendants have failed to perform a non-discretionary duty required by the ESA and that such failure constitutes agency action unlawfully withheld or unreasonably delayed under the APA. Plaintiffs seek a declaratory judgment that Defendants have violated the ESA and APA and an injunction requiring Defendants to designate a critical habitat for the minnows within one year of entry of the injunction.

Defendants admit that they have never designated a critical habitat for the minnows. In their motion to dismiss, however, Defendants argue that Plaintiffs filed too late and, thus, that the statute of limitations bars Plaintiffs' claims. Plaintiffs contend that Defendants' failure to designate a critical habitat for the minnows is a continuing violation, does not constitute final agency action, and, thus, that the six-year limitations period has not expired. Plaintiffs also assert that Defendants are collaterally estopped from raising the statute of limitations defense because the court in *S. Appalachian Biodiversity Project v. U.S. Fish and Wildlife Servs.*, 181 F.Supp.2d 883 (E.D.Tenn.2001) (Inman, M.J.) rejected Defendants' statute of limitations defense.

---

**1.** The Court takes the facts and allegations in Plaintiffs' Complaint as true, although the key facts are not in dispute.

## II. Relevant Law

### A. ESA's Critical Habitat Designation Requirement

Under the ESA, Defendants to the maximum extent prudent and determinable -

(i) shall, concurrently with making a determination ... that a species is an endangered species or a threatened species, designate any habitat of such species which is then considered to be critical habitat; and

(ii) may, from time-to-time thereafter as appropriate, revise such designation.

16 U.S.C. § 1533(a)(3)(A). The ESA defines "critical habitat" as

(i) the specific areas within the geographical area occupied by the species, at the time it is listed in accordance with the provisions of section 1533 of this title, on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and

(ii) specific areas outside the geographical area occupied by the species at the time it is listed in accordance with the provisions of section 1533 of this title, upon a determination by the Secretary that such areas are essential for the conservation of the species.

*Id.* § 1532(5)(A).

If, at the time Defendants place a species on the endangered list, they find that "critical habitat of such species is not then determinable," they may extend for one year the time period in which to designate a critical habitat. *Id.* § 1533(b)(6)(C)(ii). Critical habitat is "not determinable" when "(i) Information sufficient to perform required analyses of the impacts of the designation is lacking, or (ii) The biological needs of the species are not sufficiently well known to permit identification of an area as critical habitat." 50 C.F.R. § 424.12(a)(2).

### B. The APA Provides no Basis for Review of Plaintiffs' Claims

 The ESA provides the exclusive remedy for Defendants' failure to designate a critical habitat for the minnows. Plaintiffs may not obtain relief under 5 U.S.C. § 706(1) because the APA provides for judicial review only of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903, 108 S.Ct. 2722, 2736, 101 L.Ed.2d 749 (1988). Because the ESA provides Plaintiffs a judicial forum to challenge Defendants' administrative actions and provides for the relief they seek, 16 U.S.C. § 1540(c), (g), Plaintiffs' APA claim fails as a matter of law. *See Haw. County Green Party v. Clinton*, 124 F.Supp.2d 1173, 1193 (D.Haw.2000) ("[A] particular claim may only be brought under either the APA or the ESA ...."); *Am. Canoe Ass'n. Inc. v. U.S. E.P.A.*, 30 F.Supp.2d 908, 927 (E.D.Va.1998) ("[R]eview of these actions is not available under the APA since the ESA expressly provides an adequate remedy for plaintiffs' claims through its citizen suit provision.") (citing the ESA's citizen-suit provision).

## III. Defendants' Motion to Dismiss

### A. Motion to Dismiss Standard

The purpose of a Rule 12(b)(6) motion is to determine whether the plaintiff's complaint states a claim for relief. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts" which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In

considering a motion to dismiss, the Court must accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *Powell v. United States,* 945 F.2d 374, 375 (11th Cir. 1991).

A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss if the Complaint shows on its face that the limitations period has run. *AVCO Corp. v. Precision Air Parts, Inc.,* 676 F.2d 494, 495 (11th Cir.1982). 28 U.S.C. § 2401(a) provides that "[e]xcept as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The parties do not dispute that § 2401(a) provides the relevant statute of limitations for Plaintiffs' claims.

### B. The Issues

The parties agree that FWS designated the minnows as endangered on April 22, 1992 and extended for one year the period in which to designate a critical habitat for them. The parties also agree that the applicable statute of limitations is six years. Plaintiffs filed their Complaint on September 2, 2004, more than eleven years after the time period for designating a critical habitat expired on April 22, 1993.

The Court will first consider whether Defendants, all government officials, are estopped from raising the statute of limitations defense. If Defendants are not estopped, the Court will then consider whether Plaintiffs' allegations of a continuing violation overcome the defense.

### C. Defendants are not Collaterally Estopped from Asserting the Statute of Limitations Defense

#### 1. Relevant Law

Collateral estoppel, also known as issue preclusion, bars relitigation of an issue that has been litigated and resolved in an earlier judicial proceeding between the same parties. *Pleming v. Universal-Rundle Corp.,* 142 F.3d 1354, 1359 (11th Cir.1998). A party asserting collateral estoppel must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the resolution of the issue in the prior proceeding was a critical and necessary part of the judgment in the prior proceeding; and (4) the opposing party had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.* The "issue" in this case is whether Plaintiffs' claims are barred by the six-year statute of limitations.

A party may not assert collateral estoppel against the U.S. government if the party was not a party to the prior proceeding, i.e., if there is not "mutuality." *United States v. Mendoza,* 464 U.S. 154, 162, 104 S.Ct. 568, 573, 78 L.Ed.2d 379 (1984) (holding that non-mutual offensive collateral estoppel does not apply against the government). In all cases, trial courts enjoy "broad discretion to determine when [offensive collateral estoppel] should be applied." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979); *Deweese v. Town of Palm Beach,* 688 F.2d 731, 734 (11th Cir. 1982) ("[T]he application of collateral estoppel is committed to the sound discretion of the district court.") (citing *Parklane* and others).

#### 2. Only Plaintiff Southern Appalachian Biodiversity Project ("SABP") May Assert Collateral Estoppel in this Case

Plaintiffs assert collateral estoppel offensively in this case, i.e., they seek to preclude Defendants from asserting the statute of limitations issue because that

issue was fully litigated four years ago in *S. Appalachian Biodiversity Project.* Because the application of collateral estoppel to the U.S. Government requires mutuality between the parties to the two suits, however, SABP is the only Plaintiff that may assert collateral estoppel in this case. *See Mendoza,* 464 U.S. at 162, 104 S.Ct. at 573. It is undisputed that SABP was the only plaintiff in *S. Appalachian Biodiversity Project.*

3. **The Court has Discretion to Reconsider an Unmixed Question of Law on an Important Issue Involving Interpretation of the ESA**

■ The policy behind application of the collateral estoppel doctrine is to prevent the same parties from re-litigating an issue previously decided. This policy is not furthered by preventing a subsequent court presiding over different litigation between the parties from reconsidering a legal issue involving different facts. The Restatement (Second) of Judgments provides that "if the issue is one of the formulation or scope of the applicable legal rule, and if the claims in the two actions are substantially unrelated," application of collateral estoppel to the issue is disfavored. § 28, cmt. b. Such an issue, sometimes referred to as an "unmixed question of law," may be considered a "special circumstance warrant[ing] an exception to the normal rules of preclusion." *Montana v. United States,* 440 U.S. 147, 155, 162, 99 S.Ct. 970, 975, 978, 59 L.Ed.2d 210 (1979). *See United States v. Stauffer Chem. Co.,* 464 U.S. 165, 171, 104 S.Ct. 575, 579, 78 L.Ed.2d 388 (1984) ("The exception seems to require a determination as to whether an 'issue of fact' or an 'issue of law' is sought to be relitigated and then a determination as to whether the 'issue of law' arises in a successive case that is so unrelated to the prior case that relitigation of the issue is warranted.").

The statute of limitations issue here is a pure question of law, and this case is sufficiently "unrelated to [*S. Appalachian Biodiversity Project* ] that relitigation of the issue is warranted." *Stauffer Chem. Co.,* 464 U.S. at 171, 104 S.Ct. at 579. In the previous case, SABP sued Defendants in Tennessee action for failure to designate critical habitat for various types of mussels. *S. Appalachian Biodiversity Project,* 181 F.Supp.2d at 885 & nn. 7–8. The present case involves a different species designated as endangered. The endangered species in this case are in a different geographical area for the purpose of designating critical habitat. Moreover, the factual basis for not designating a habitat is different: in the Tennessee action, FWS had not designated a critical habitat because it was not "prudent" to do so. In this case, critical habitat was not designated because such habitat was not "determinable" at the time.

This Court, in exercising its "sound discretion" on this issue, *Deweese,* 688 F.2d at 734, finds it inappropriate to apply offensive collateral estoppel against Defendants. The legal issue decided in the Tennessee action is an important one involving interpretation of the ESA. Yet the court in *S. Appalachian Biodiversity Project* offers little basis for its conclusion and reaches a different result from other federal courts that have considered the issue.[2] This Court finds, therefore, that Defendants are not collaterally estopped from litigating the statute of limitations defense as to SABP's claims.

**D. Plaintiffs' Claims are Barred by the Statute of Limitations**

Defendants argue that Plaintiffs' cause of action accrued no later than the first

---

**2.** Indeed, the Court has found no other reported case supporting the Magistrate Judge's conclusion in *S. Appalachian Biodiversity Project.*

day they could have filed suit, which was June 22, 1993. Furthermore, all facts necessary for Plaintiffs to claim that Defendants had not designated "a geographical area occupied by the two species of minnows" were established "at the time [the minnows were] listed" as endangered. 16 U.S.C. § 1532(5)(A).

■ The ESA does not impose a continuing duty on Defendants to designate a critical habitat. The ESA permits Defendants to designate critical habitat within one-year after designating the species as endangered, "but *not later than* the close of such additional year [Defendants] *must* publish a final regulation, based *on such data as may be available at that time,* designating, to the maximum extent prudent, such habitat." 16 U.S.C. § 1533(b)(6)(C)(ii) (emphasis added). Thus, the ESA's plain language mandates that Defendants perform their duty of designating critical habitat within a specified time period and based on facts existing at that time. *Cf. id.* § 1533(f) (requiring Defendants to develop and implement recovery plans, but imposing no time limit on this duty).

■ Defendants violated their duty to designate a critical habitat for the minnows on April 22, 1993 when the one-year period for doing so expired. Because the ESA afforded Defendants no additional time beyond April 22, 1993 to designate a critical habitat for the minnows and imposed no continuing duty on Defendants regarding such designation, there is no continuing violation. Defendants' violation occurred upon expiration of the one-year period, as it would have occurred on April 22, 1992 if Defendants had determined at

that time that it was not prudent to designate a critical habitat. *See Missouri v. Sec'y of the Interior,* 158 F.Supp.2d 984, 989–90 (W.D.Mo.2001) (holding that plaintiffs' claims accrued, for purposes of commencing the statute of limitations, when Defendants formally issued the final regulation finding that designation of critical habitat was not prudent and not determinable); *Wild Ala. v. Babbit,* No. CV–99–0093–S, slip op. at *5 (N.D.Ala. Sept. 7, 1999) (holding that Defendants' finding that it was not prudent to designate a critical habitat was a final agency action, that Defendants had no continuing duty under the ESA to designate a critical habitat after making such a finding, and, thus, that plaintiff's claims were time-barred).[3]

The ESA expressly provides a private right of action for such a violation, 16 U.S.C. § 1540(g)(1)(A), (C), and Plaintiffs could have filed suit as early as June 22, 1993. "The continuing violation doctrine is premised on 'the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated.' " *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1222 (11th Cir.2001) (citations omitted). A reasonably prudent person in Plaintiffs' position would have possessed all the facts needed to support Plaintiffs' present claims on April 22, 1993. Thus, this case is not appropriate for the continuing violation doctrine.

A limitations period is based upon the sound policy that, at some point, a party to a possible cause of action should be able to consider the matter closed. It further recognizes establishing facts in support or in

---

**3.** Plaintiffs undoubtedly consider that they continue to suffer the effects of Defendants' failure to designate a critical habitat for the minnows by the April 22, 1993 deadline. The continuing violation doctrine does not save time-barred violations that cause continuing

or lingering harm, however. *City of Hialeah v. Rojas,* 311 F.3d 1096, 1102–03 (11th Cir. 2002) ("[A] present consequence of past [unlawful conduct] ... has no present legal significance [if] it lies outside of the statutory limitations period.").

defense of a claim becomes increasingly difficult as time passes, conditions changes, and memories fade. To hold that Defendants' failure to designate in 1992 is a continuing violation would allow Plaintiffs to sue for the violation in perpetuity. This result would defeat the reasons for establishing a limitations period. The present case illustrates the problem. It would be difficult now, after twelve years of changing conditions, to determine a critical habitat "based on such data as may [have been] available at that time [in 1993]." 16 U.S.C. § 1533(b)(6)(C)(ii). Indeed, the area that may have been critical habitat in 1993 quite probably would have changed by 2005.

Furthermore, Plaintiffs are not without a remedy based on presently existing conditions. The ESA provides a procedure by which Plaintiffs may petition the Secretary of the Interior to establish a critical habitat for the minnows. *Id.* § 1532(5); 50 C.F.R. § 424.14(d). "Such a submission would trigger a mandatory duty for the Secretary to promptly conduct a review of the situation and take appropriate action." *Babbitt,* slip op. at *5–*6 (citing 50 C.F.R. § 424.14(d)).

 Finally, the Court notes that Plaintiffs' argument regarding the limitation period is contrary to Congress' intent in enacting the six-year statute. The Supreme Court has emphasized that

> Under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy. Only when a literal construction of a statute yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied.

*United States v. Rutherford,* 442 U.S. 544, 555, 99 S.Ct. 2470, 2477, 61 L.Ed.2d 68 (1979) (citations omitted). The Court will not create an exception to 28 U.S.C. § 2401(a) in the absence of any indication that Congress intended such an exception. Moreover, by enacting a six-year statute of limitation for claims against the federal government, Congress, in effect, made the decision to waive sovereign immunity for that time period. The question here, therefore, is one of jurisdiction, and the waiver of sovereign immunity should be strictly construed. *See Wilderness Soc'y v. Norton,* No. 03–64(RMC), slip op. at *9–*10 (D.D.C. Jan. 10, 2005).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [# 3] is **GRANTED.** Plaintiffs' claims against all Defendants are **DISMISSED with prejudice.**

## *ORDER DENYING RECONSIDERATION*

Pending before the Court is Plaintiffs' Motion for Reconsideration [# 15] of the Court's June 2, 2005 Order granting Defendant's motion to dismiss Plaintiff's claims. The Court **DENIES** the motion.

 Motions for reconsideration should be granted only if: (1) there has been an intervening change in controlling law; (2) new evidence has been discovered; or (3) reconsideration is needed to correct clear error or prevent manifest injustice. *Richards v. United States,* 67 F.Supp.2d 1321, 1322 (M.D.Ala.1999). Reconsideration is vested in the district court's sound discretion, and the grant of a motion to reconsider is an extraordinary remedy employed sparingly. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dept. of Health and Rehabilitative Servs.,* 225 F.3d 1208, 1216 (11th Cir.2000); *Brogdon v. Nat'l Healthcare Corp.,* 103 F.Supp.2d 1322, 1338 (N.D.Ga.2000) (Murphy, J.) ("Parties ... may not employ a motion for reconsideration as a vehicle to present new arguments

or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind."); *Richards,* 67 F.Supp.2d at 1322.

Although Plaintiffs do not address the above standard applicable to motions for reconsideration, their brief indicates that they are not proceeding on the grounds of discovery of new evidence they could not have previously discovered or that there has been an intervening change in controlling law. Thus, the Court should reconsider its June 2, 2005 Order only if it is clearly erroneous or results in manifest injustice. Plaintiffs assert that the Order is clearly erroneous in numerous respects.

First, Plaintiffs challenge the Court's decision that collateral estoppel does not bar Defendants from using the statute of limitations as a defense. The factual inquiry regarding designation of critical habitat differs for each species listed under the Endangered Species Act ("ESA"). That the minnows at issue in this case and some of the endangered species at issue in *S. Appalachian Biodiversity Project v. U.S. Fish and Wildlife Servs.,* 181 F.Supp.2d 883 (E.D.Tenn.2001) coexist in the Mobile river basin of a tri-state geographical area does not establish that the two civil actions are sufficiently related to preclude application of the unmixed question of law exception to the collateral estoppel doctrine. The Court's previous determination in this regard was not clearly erroneous.

Second, Plaintiffs challenge the Court's determination that their claims are barred by the six-year statute of limitations provided in 28 U.S.C. § 2401(a). Plaintiffs have merely repackaged the arguments they presented in their opposition to Defendants' motion to dismiss, however, and have not shown that the Court's resolution of the statute of limitations issue was clearly erroneous. Plaintiffs disagree with the Court's interpretation of the ESA as not imposing a continuing duty on Defendants to designate critical habitat after the one-year period specified in 16 U.S.C. § 1533(b)(6)(C)(ii) has expired. The Court's interpretation of the ESA is a reasonable one supported by the plain meaning of the ESA's text. Plaintiff's interpretation, on the other hand, would frustrate the policies underlying Congress' enaction of a six-year statute of limitations for virtually all civil actions commenced against the United States. *See* 28 U.S.C. § 2401(a).

Congress specifically provided in the ESA for a certain date by which Defendants must designate critical habitat for newly listed endangered species. 16 U.S.C. § 1533(b)(6)(C)(ii). Plaintiffs would have the Court ignore the ESA's plain text, however, and imply a continuing duty because the statute does not expressly rule out this possibility. This the Court cannot do. The time limits the ESA imposes on Defendants for designating critical habitat render any violation of this duty readily apparent and, thus, facilitate enforcement of the duty. The dispositive issue here is not whether Congress intended for Defendants to comply with their statutory duty to designate critical habit for endangered species—it clearly did—but whether Congress intended to allow private parties to enforce this duty at *any* time after it is violated.

Under Plaintiffs' interpretation of the ESA, a person could file a civil action against Defendants in perpetuity for a single failure to designate critical habitat for a single listed species because the cause of action would never accrue and, thus, the statute of limitations would never commence. Congress' enactment of a six-year statute of limitations indicates that it did not intend such an absurd result. Plaintiffs' interpretation of the ESA's critical

habitat designation requirement cannot be reconciled with Congress' clear intent, expressed in 28 U.S.C. § 2401(a), to provide some measure of finality to litigation commenced against the federal government. Indeed, Plaintiff's interpretation would effectively eviscerate 28 U.S.C. § 2401(a)'s application to private enforcement suits brought under the ESA. If Congress had intended to provide an exception to the statute of limitations for actions under the ESA, it would have done so. *See* Pub.L. No. 95–563, § 14(b), 92 Stat. 2383 (1978) (amending 28 U.S.C. § 2401(a), which had previously applied equally to all civil actions commenced against the United States, to provide an exception for actions brought against the United States under the Contract Disputes Act of 1978).

As the Court noted in its June 2, 2005 Order, there is an administrative remedy available to redress Defendants' failure in 1993 to designate a critical habitat for the minnows. The federal regulations promulgated pursuant to the ESA's express direction, specifically 50 C.F.R. § 424.14(d), allow Plaintiffs to file a petition to *designate*—not merely to revise—critical habitat. If Defendants fail to act on such a petition or act arbitrarily, Plaintiffs may seek judicial review of such action (or inaction) under the Administrative Procedure Act. Plaintiffs' dissatisfaction with the practicability of this administrative remedy is no basis for ignoring the strong policy supporting the six-year statute of limitations. Plaintiffs could have avoided their present predicament altogether by not waiting eleven years to pursue the judicial remedy afforded them under the ESA for Defendants' failure to designate a critical habitat, a violation that was evident to any concerned persons in 1993.

For the foregoing reasons, Plaintiffs have not shown that the Court's June 2, 2005 Order was clearly erroneous or that the Court must reconsider its dismissal of Plaintiffs' claims to prevent manifest injustice. Accordingly, Plaintiffs' motion for reconsideration [# 15] is **DENIED**.